**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

**DEBRA WELCH,**

      **Plaintiff,**

    **v.**         **3:04-CV-1457**
              **(GLS)**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

───────────────────────────────

**APPEARANCES:**      **OF COUNSEL:**

**FOR THE PLAINTIFF:**

LACHMAN, GORTON LAW FIRM  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761

**FOR THE DEFENDANT:**

HON. GLENN T. SUDDABY   WILLIAM H. PEASE
United States Attorney     Assistant U.S. Attorney
PO Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Debra Welch challenges the denial of disability benefits by the Commissioner of Social Security.  Welch brings this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. Procedural History

After Welch filed for Social Security Disability Insurance (SSDI) benefits in September 2002, her application was denied, and a hearing was conducted by Administrative Law Judge (ALJ) Richard R. Pietrowicz. Welch alleges disability beginning on May 15, 1999 due to seizures.  (Tr. 17).  On July 22, 2002, the ALJ issued a decision denying benefits, and that decision became the Commissioner's final determination.

### III. Contentions

Welch contends that the ALJ's decision is not supported by substantial evidence.  More specifically, she claims that the ALJ erroneously concluded that her seizures were not severe.  Welch also claims that the ALJ did not give proper weight to the opinion of her treating

2

physician or properly determine her Residual Functional Capacity (RFC).

Lastly, Welch contends that the ALJ did not fully credit her testimony or the

testimony of her witnesses during the administrative hearing.  The

Commissioner counters that substantial evidence supports the ALJ's

disability determination.

## IV.  <u>Facts</u>[1]

## A.    <u>Background</u>

### 1.    <u>Administrative Hearing</u>

At the time of the ALJ's decision, Welch was a 52-year-old individual

with a high school education.  (Tr. 105).  Her past work experience

included employment as an office aide and a teacher's aide.  (Tr. 126).

She alleges that she can no longer work due to seizures.  (Tr. 106).

During the administrative hearing, Welch testified that she first began

experiencing seizures when she worked as a teacher's aide in March 1998.

(Tr. 32).  Welch testified that she may go as long as three weeks without

having one, and then will have as many as eight a day, or one every day

for a month.  (Tr. 41).  Overall, Welch testified that she experienced 17

---

[1]The defendant did not include a statement of facts.  Therefore, the following facts were taken from the administrative record and Welch's statement of facts.  *See Pl. Brief, pp. 1-3; Dkt. No. 9.*

grand mal seizures,[2] and estimated that she would experience 60 by the year's end, in addition to frequent smaller seizures.  (Tr. 41).  Welch testified that when she has a seizure she goes unconscious, bites her tongue, kicks, and urinates on herself.  (Tr. 41, 48). Typically, she also hits or cuts her face due to uncontrollable body movements.  (Tr. 49).  When asked by the ALJ what causes her seizures, Welch responded that she does not know.  (Tr. 34).  She further testified that there is no evidence of neurological impairments in her family or a history of a traumatic accident that would account for her condition.  (Tr. 38, 48).  Welch testified that her seizures just "come over her," she becomes unconscious, and remembers nothing of the event.  (Tr. 34, 41).  She also testified that medication has not helped control her seizures and that she cannot drive because of the possibility of a seizure.  (Tr. 38, 50).

In response to questioning regarding her medications, Welch testified that beginning in 2003 she started taking Neurontin, which made her feel like she was in a "stupor."  (Tr. 50).  Welch testified that she formerly took Dilantin, but stopped because of side effects, such as bleeding gums, liver

---

[2]Grand mal is defined as a "symptomatic form of epilepsy often preceded by an aura; characterized by a loss of consciousness[.]..."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 567 (28th ed. 1994).

damage, and heart palpitations.  (Tr. 51).  Welch also testified that her

seizures have negatively impacted her vision, her ability to read, and her

memory.  (Tr. 52-55).

Welch's husband and son also testified at the hearing.  Welch's son,

Chad Welch, testified that during an episode his mother moans loudly, falls

down, her eyes roll back in her head, and she spits and urinates.  (Tr. 56-

57).  Chad Welch also testified that following an episode, Welch sleeps for

an hour and remains groggy and unable to do normal functions, including

talking, for a few days.  *See id.*  Welch's husband, Al Welch, testified that

his wife is no longer able to do housework or cooking following a grand mal

seizure.  (Tr. 61).  He also testified that she is not herself on medication

and is "zombie-like."  *See id.*  Al Welch also described his wife's smaller

seizures as characterized by twitches and shakes.  (Tr. 62).

### 2.   Medical Evidence

In January 1999, Welch was examined by her treating physician, Dr.

Brian Beach.  Dr. Beach opined that hypoglycemia may be a cause for

Welch's seizures and prescribed her Dilantin and a hypoglycemic diet.  (Tr.

148).  Dr. Beach noted that if Welch's seizures were controlled by a

hypoglycemic diet, then he would gradually decrease her Dilantin

medication.  *See id.*

In February 1999, Dr. Beach noted that Welch appeared to be "doing fine" and that she had not experienced any severe episodes other than some light-headedness.  (Tr. 147).  Later that year, Dr. Beach determined that Welch should stop taking Dilantin since it seemed to have no positive effect on her condition.  (Tr. 144).  In June 1999, Dr. Beach noted that Welch had one episode of "hypoglycemia," which he characterized as like a seizure, but he opined that she did not have epilepsy and referred her to an endocrinologist.  (Tr. 143).

In November 1999, Welch visited Dr. Lance Gates.  Dr. Gates  noted that Welch had a history of hypoglycemia and complained of having seizures for about one year but was currently medicated for her condition. (Tr. 166).  Dr. Gates referred Welch to neurologist, Dr. Taseer Minhas. *See id.*  There are no treatment notes or electroencephalograms (EEG) on record from Dr. Minhas, except for a pharmacy record that indicated that Dr. Minhas prescribed Welch Neurotin in March 2003.  (Tr. 140).  The pharmacy record indicates that Neurotin is prescribed to help control seizure disorders.  *See id.*  The pharmacy record also indicates that Neurotin's side effects are usually well-tolerated, and may include

6

drowsiness and nausea, and in rare cases, mental or mood changes, vision problems, and fever.  *See id.*

In January 2002, Welch underwent an examination at the Guthrie Clinic.  (Tr. 169).  The examining physician noted that Welch complained of a history of seizures, but her EEG tests and scans were normal.  *See id.* Welch stated that she believed her seizures were related to moodiness, stress, and low blood sugar.  *See id.*  She also attributed her condition to "empty nest" syndrome and reported that she was no longer working as a teacher's aide because she voluntarily stopped driving due to her episodes. (Tr. 170).  Welch also reported that she stopped taking Dilantin for her seizures because it caused liver toxicity.  (Tr. 169).  Welch was prescribed Zoloft for her mood and stress concerns.  (Tr. 170).

In October 2002, Welch underwent a complete physical examination by Dr. Diane Paukett.  Dr. Paukett noted that Welch's musculosketal examination was unremarkable except for some swelling in her right knee. (Tr. 179-185).  Dr. Paukett also noted that Welch had no limitations related to her speech, vision, hearing, bending, sitting, and standing.  *See id.*  She noted mild limitations related to stair climbing, walking, grooming, and household chores.  *See id.*  Dr. Paukett lastly noted marked limitations

related to lifting and strenuous physical activity.  *See id.*  A psychological exam conducted by Dr. Marion Graff in October 2002 revealed that Welch would have no difficulties in any area of vocational functioning since her limitations appear to be erratic and dependent on her seizures.  (Tr. 187-191).

Also in October, Welch's chiropractor, David Lourro, noted that her motor strength, gait and sensory examination were normal.  (Tr. 172-178).  Lourro also noted that Welch's seizures have no established pattern.  *See id.*  In December, state agency physicians evaluated Welch and found her seizure complaints only partially credible.  *See id.*  The state agency physicians also found that Welch was capable of "lifting and carrying 20 pounds occasionally, 10 pounds frequently; she could stand and walk 6 hours in an 8 hour work day; she could sit 6 hours in a 8 hour work day; she could occasionally balance, stoop, kneel, crouch, and crawl, but never climb; and she must avoid exposure to machinery and heights."  *See id.*  In making their findings, the state agency physicians noted that Welch had not been treated for seizures since 1999, and that her CT scan was normal.  (Tr. 198).  The state evaluation also noted that the record indicates that her condition is hypoglycemic in nature, as opposed to a true

8

seizure disorder.  *See id.*

## V. <u>Discussion</u>

### A.  <u>Standard and Scope of Review</u>

A court's review of the Commissioner's final decision is limited to determining whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Although the Commissioner is ultimately responsible for determining a claimant's eligibility, the actual disability determination is made by an ALJ.  The ALJ's decision is subject to judicial review on appeal.  *See* 42 U.S.C. § 405(g).  A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence.  *See Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's "findings is limited to assessing whether substantial evidence in the record supports those

findings." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see also* 42 U.S.C. § 405(g).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Id.*  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Id.*  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *See  Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The court has authority to reverse with or without remand.  *See* 42 U.S.C. § 405(g).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Cutler v. Weinberger*, 516 F.2d 1282, 1287 (2d Cir. 1975) (remand to permit claimant to produce further evidence).  Reversal is appropriate, however, when there is

"persuasive proof of disability" in the record and "remand for further evidentiary proceedings would serve no purpose." *Parker*, 626 F.2d at 235; *see also Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of HHS*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where remand would result in lengthening the "painfully slow process" of determining disability).

## B.   Five-Step Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  To be considered disabled, a plaintiff seeking benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[3]  The Commissioner

---

[3]In addition, a claimant's

> physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do her previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

uses a five-step process to evaluate SSDI and SSI claims.  *See* 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).[4]  Step One requires the ALJ to

determine whether the claimant is presently engaging in substantial gainful

activity (SGA).  *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If a

claimant is engaged in SGA, she will not be considered disabled.  If the

claimant is not engaged in SGA, Step Two requires the ALJ to determine

whether the claimant has a severe impairment.  *See* 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant is found to suffer from a

severe impairment, Step Three requires the ALJ to determine whether the

claimant's impairment meets or equals an impairment listed in 20 C.F.R.

404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the impairment meets or equals a listed impairment,

the claimant is presumptively disabled.  *See Ferraris*, 728 F.2d at 584.  If

the claimant is not presumptively disabled, Step Four requires the ALJ to

---

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

[4]The court notes that revised versions of these sections became effective in September 2003.  *See* 68 Fed. Reg. 51161, 51164 (Aug. 26, 2003).  In the revised versions, paragraph (e) clarifies the application of the RFC determination.  New paragraphs (f) and (g), with certain modifications, correspond to the prior versions' paragraphs (e) and (f), respectively.  These revisions do not affect the Five-Step Disability Determination sequence.  The revised versions have no effect on the outcome of this case.  For considerations of uniformity, and because the ALJ's decision predated the revisions, the court retains the old nomenclature in its analysis.

consider whether the claimant's Residual Functional Capacity (RFC) precludes the performance of her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step Five, the ALJ determines whether the claimant can do any other work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant has the burden of showing that she cannot perform past relevant work. *See Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, benefits can only be denied by showing, with specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Sec'y of HHS*, 910 F.2d 64, 65 (2d Cir. 1990); *Ferraris*, 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if the claimant can perform other work existing in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also N.Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

In this case, the ALJ found that Welch satisfied Step One because she was not engaged in substantial gainful activity. (Tr. 23). In Step Two, the ALJ determined that Welch had a "severe" impairment due to her

13

seizures.  *See id.*  In Step Three, the ALJ determined that her impairment

failed to equal an impairment or combination of impairments listed in, or

medically equal to, one listed in the regulations.  *See id.*  In Step Four, the

ALJ determined that Welch retained the RFC to perform light work, which

included her past relevant work as a teacher's aide or an office aide.  *See*

*id.*  Consequently, he found that Welch was not disabled and denied

benefits.  *See id.*

## C.    New Evidence[5]

Welch argues that the Appeals Council erred in not considering

whether an abnormal EEG completed in January 2004 satisfied the listing

for neurological impairments.  Welch further argues that the Appeals

Council ignored the opinion of her treating physician, Dr. Aamir Rasheed,

who opined that it was reasonable to assume that she had experienced

seizures since 1999.  These contentions are without merit.  The regulations

provide:

> If new and material evidence is submitted, the Appeals Council
> shall consider the additional evidence only where it relates to

---

[5]Following the ALJ's decision, Welch submitted new evidence to the Appeals Council
from January 2004-July 2004.  (Tr. 4-5).  This evidence included an abnormal
electroencephalogram (EEG) revealing seizure activity.  *See id.*  Welch also submitted a
medical source statement from Dr. Aamir Rasheed indicating that it was reasonable to assume
that she suffered from seizures since 1999.  *See id.*

> the period on or before the date of the administrative law judge
> [sic] hearing decision.  The Appeals Council shall evaluate the
> entire record including the new and material evidence...[i]t will
> then review the case if it finds that the administrative law
> judge's action, findings, or conclusion is contrary to the weight
> of the evidence currently of record.

20 C.F.R §§ 404.970(b), 416.1470(b).  However, if the Appeals Council

denies review, the new evidence becomes a part of the overall record even

though it was not before the ALJ.  *See Perez v. Chater*, 77 F.3d 41, 45 (2d

Cir. 1996); *see also Farina v. Barnhart,* 04-CV-1299, 2005 WL 91308, at *5

(E.D.N.Y. Jan. 18, 2005).  Treating the new evidence as part of the

administrative record "does not require the district court...to perform any

functions performed by the ALJ.  *Perez,* 77 F.3d at 46.  Furthermore,

"[w]hen the Appeals Council denies review...[the district court] simply

review[s] the entire administrative record...[to] determine...whether there is

substantial evidence to support the decision of the Secretary."  *Id.*

Here, the Appeals Council considered the new evidence submitted

for the period January 2004 to July 2004 and denied review.  (Tr. 4-5).  As

the Appeals Council noted, the ALJ considered medical evidence for

Welch's case through July 22, 2003.  Therefore, the abnormal EEG from

January 2004 was not applicable because the neurological testing

15

conducted prior to 2003 was normal.  Moreover, the Appeals Council did not err in disregarding the opinion of Dr. Rasheed because his findings do not relate to the period of time considered by the ALJ.  Accordingly, the Appeals Council properly denied review after considering the new evidence.  Therefore, ALJ's decision is based on substantial evidence.

## D.   Credibility

Welch contends that the ALJ failed to give greater weight to her hearing testimony and her family members' testimony.[6]  She specifically argues that the testimony of her son and husband establishes the severity and frequency of her seizure disorder.[7]

The Commissioner is obligated to evaluate all of a claimant's "symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a), 416.929(a).  The ALJ

---

[6]Welch argues that the testimony of her family members is particularly important in her case because she becomes unconscious when she experiences a seizure and does not remember the event.

[7]Welch further argues that the Appeals Council failed to consider new evidence because the ALJ concluded that her testimony was not fully credible.  To the contrary, the Appeals Council reviewed the new evidence and determined that it did not relate to the period of time considered by the ALJ and could not be retroactively applied.  (Tr. 4-5).  The Appeals Council also informed Welch that she could file a new application with the new evidence.  *See id.*

must perform a two-step analysis.  *See* 20 C.F.R. §§ 404.1529, 416.929;

*see also Crouch v. Comm'r, Soc. Sec. Admin.*, 01-CV-899, 2003 WL

22145644, at *10 (N.D.N.Y. Sept. 11, 2003) (citation omitted).  First, based

upon the objective medical evidence, the ALJ must determine whether the

impairments "could reasonably be expected to produce the pain[8] or other

symptoms alleged[.]..."  20 C.F.R. §§ 404.1529(a), 416.929(a); *see Crouch*,

2003 WL 22145644, at *10.  "Second, if the medical evidence alone

establishes the existence of such impairments, then the ALJ need only

evaluate the intensity, persistence, and limiting effects of a claimant's

symptoms to determine the extent to which it limits the claimant's capacity

to work."  *Crouch*, 2003 WL 22145644, at *10 (citing 20 C.F.R. §§

404.1529(c), 416.929(c)).

A plaintiff may suffer some degree of pain as a result of a condition.

However, some pain does not automatically translate into disabling pain.

*See Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir. 1983) ("disability

requires more than mere inability to work without pain").  Moreover, "[a]n

---

[8]The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  *See Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996).

individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]..."  42 U.S.C. § 423(d)(5)(A).

Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors.  These factors include "daily activities;...the location, duration, frequency and intensity of [claimant's] pain or other symptoms;...[t]he type, dosage, effectiveness and side effects of...medication;" and other treatments or measures to relieve those symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); Social Security Ruling (SSR) 96-7p.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p.  Therefore, "[a]n [ALJ] may properly reject [subjective complaints of pain] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ considered Welch's testimony about her limitations but

18

did not find her testimony fully credible.  As the ALJ noted, Welch reported

that she has already had 17 grand mal seizures and "dozens" of smaller

seizures this year.  (Tr. 21).  The ALJ also noted that Welch's son Chad

Welch testified that when his mother has seizures, she moans loudly, her

eyes roll back, she urinates, and sleeps afterwards.  *See id.*  Chad Welch

also testified that she can be "out of it" for a few days.[9]

However, as the ALJ noted, despite testimony regarding her

seizures, Welch's condition is "not documented by an EEG and there has

been no detailed description of a typical seizure pattern."  (Tr. 20).

Instead, her EEG and CT scan have been normal.  *See id.*  As the ALJ

also noted, no treating or examining physician has mentioned findings

equivalent in severity to the criteria of any listed impairment.  *See id.*

Lastly, the ALJ noted that Welch was taken off seizure medication in 1999,

and did not resume medication until 2003, when she started taking

Neurontin.  *See id.*  Accordingly, the ALJ's decision is supported by

substantial evidence, and he adequately explained why he did not fully

credit Welch's subjective complaints, or the testimony of her husband and

---

[9]The ALJ also noted that Welch's husband testified that his wife no longer drives because of her seizures.  (Tr. 21).

her son.

## E.   <u>Residual Functional Capacity</u>

Welch also contends that the ALJ improperly concluded that she was capable of light work.  She specifically argues that the ALJ failed to consider her non-exertional limitations, such as the harmful side effects of her medication.  She further argues that the nature of her seizure disorder made it impossible for her to carry out a full day's work without interruption. Lastly, she argues that the ALJ was required to call a vocational expert. These contentions are without merit.

The Regulations define RFC as "the most [an individual] can still do despite [their] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  At the review level relevant here, the responsibility for determining a claimant's RFC rests with the ALJ.  *See* 20 C.F.R. §§ 404.1546, 416.946. An ALJ's RFC assessment is a medical determination that must be based on probative medical evidence of record.  *See Gray v. Chater*, 903 F. Supp. 293, 301 (N.D.N.Y. 1995).  An ALJ may not "substitute his own judgment for [a] competent medical opinion."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)

(citation omitted).

A vocational expert may provide testimony regarding the existence of jobs in the national economy.  *See Dumas,* 712 F.2d 1545 at 1553-54. "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with [her] limitations and capabilities, can realistically perform a particular job."  *Jehn v. Barnhart*, 408 F. Supp. 2d 127, 135 (E.D.N.Y. 2006) (citation omitted).  "Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F. Supp. 497, 504 (S.D.N.Y. 1996).

While Welch's arguments based on her RFC may be valid under different circumstances, here, she has failed to provide objective evidence to support the severity and frequency of her seizures.  As stated in the previous section, there is no therapeutic or diagnostic evidence to support Welch's claims.  (Tr. 21).  Moreover, Welch's argument that the ALJ erred in not considering the impact of side effects is also without merit.  Welch claims that she discontinued taking Dilantin because it caused bleeding, liver problems and heart palpitations.  (Tr. 51).  As the ALJ noted, the

21

record indicates that Welch did not take any medication for her seizures from 1999 to 2003. Therefore, if she stopped taking the medication altogether, she cannot now claim that its side effects prevented her from work. (Tr. 21). Even so, there is no objective medical evidence establishing the side effects claimed by Welch. Instead, as the ALJ further noted, the record shows that Welch's treating physician, Dr. Beach, took her off Dilantin because he opined that her seizures were hypoglycemic in nature and not because of harmful side effects. *See id.* Accordingly, the ALJ's decision is supported by substantial evidence, and the decision is affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying benefits is **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

October 23, 2006
Albany, New York

United States District Court Judge